DAVID CLARK v. FANNIE L. PETT, Appellant.

**Agency:** EVIDENCE: SUFFICIENCY. In this action for the specific performance of an agent's contract for the sale of land the evidence is reviewed and held to show that the agent had authority to make the contract.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

THURSDAY, APRIL 6, 1911.

ACTION to enforce the specific performance of a contract to convey an eighty-acre tract of land. There was a decree for the plaintiff, and defendant appeals.—*Affirmed.*

*Cullison & Cullison,* for appellant.

*Conner & Lally,* for appellee.

McCLAIN, J.—Prior to June 19, 1908, defendant had title, under assignment of a contract to her by her brother

Oliver, to the land in controversy, subject to some claim held by one Carr in whom the legal title was vested. On the land was a frame house, unoccupied, a chicken house, and the remnants of an old barn and shed which had been broken down by the wind. Defendant resided on another tract of land across the road, keeping house for her brother Oliver and for a younger brother, and the place on which they resided was farmed, together with the land in controversy by her brothers. A proposed sale of the land in controversy to plaintiff, a neighbor, was with defendant's consent. But the agent through whom the negotiations were conducted had been advised that the price was $60 per acre, while Clark had only expressed a willingness to pay $55 per acre, and defendant had, as it was understood, been insisting on a reservation of the occupancy of from five to seven acres of the land on which the buildings were situated until she should be able to remove the buildings to the land on which she and her brothers were living. It would seem that the defendant had wished this reservation to be for a definite period of five years, and to this the plaintiff had objected. While the affair was in this situation, defendant was informed through her brothers that plaintiff would give $58 per acre, and the agent had been advised that this offer would probably be accepted. On the date above stated, the agent telephoned to defendant that Clark was ready to enter into a contract, and defendant replied that her brother Oliver was unable to come to town for that purpose; but on being urged, she agreed that Oliver should come and sign a contract for her, which he did. The contract thus signed by Oliver, who affixed defendant's name by himself as agent, contained the following reservation: "It is understood that the first party (defendant) reserves a right to remove the house from the above-described land, same to be removed at earliest convenience of first party." And this contract was left in escrow with a bank to be held until

the balance of the purchase price should be paid on the 1st of March following; $100 being paid by check which was received by Oliver and delivered to the defendant. When this check was delivered to defendant by her brother (being made payable to her), there was no conversation between her and her brother as to the terms of the contract which he had signed; but within a few days some question of the kind was raised, and defendant examined the contract at the bank, and a few days later tendered the check back to plaintiff, claiming that the reservation was not in accordance with her wishes. When plaintiff on March 1st tendered the balance of the purchase price, defendant refused to accept it, and plaintiff now seeks to enforce the contract in accordance with its terms.

The sole controversy is one of fact as to whether defendant's brother Oliver had authority to bind her by signing her name to the contract. It would serve no useful purpose to set out the evidence in full. The testimony of the defendant with reference to the prior negotiations is in material respects contradicted by the testimony of the plaintiff and of the agent through whom the negotiations were conducted. On the other hand, defendant is to some extent corroborated by the testimony of her brother Oliver and that of the other brother who was active with the agent in bringing about a contract. The question as to Oliver's authority is to our minds determined in favor of plaintiff on these considerations: There had never been any agreement prior to the signing of the written contract as to the terms on which defendant would sell and plaintiff would buy. There had been differences as to the price and as to the proposed reservation. Defendant had never had any reason to believe or understand that plaintiff was assenting on either of these points to the terms which she was proposing. When plaintiff had proposed $58 per acre, nothing then being said as to the nature or extent of any reservation, defendant had indicated her intention to ac-

cept his proposition, and it was to enter into a written contract for the sale of the land that Oliver was commissioned by defendant to represent her at the agent's office. Defendant must have known that the making of the written contract involved the settlement of the terms of any reservation which should be made, and she gave him no directions as to the terms of the contract which he should sign nor as to the limitations which should be contained in it. Defendant and her brother Oliver had always consulted with each other in regard to the business affecting the land, and he had always acted for her in transactions of that kind. Now it seems to us that, when the defendant directed Oliver to act for her in executing a specific contract of sale, the terms of which had not been previously agreed upon, she necessarily gave him authority to fix such terms and to bind her with reference thereto. The agent conducting the negotiations was advised by defendant that Oliver would come to his office to enter into a contract, and plaintiff was therefore authorized to believe that there was no concealed limitation upon the agency of Oliver in representing defendant. It was not reasonable to assume that, in agreeing to a price per acre for the eighty-acre tract, plaintiff intended to consent to a reservation for five years of the occupancy by defendant of a tract from five to seven acres not otherwise specifically designated in order that she might remove from the land the unoccupied buildings. Plaintiff has not questioned defendant's right to remove such buildings within a reasonable time, as she may see fit. If the evidence showed that a specific reservation different from that fixed in the contract had been insisted upon by defendant and assented to by plaintiff, and that Oliver was given no authority to execute a contract differing in that respect from such agreed terms, then it might well be said that plaintiff was not justified in relying on Oliver's assent to a different contract. But the reservation now insisted upon by defend-

ant appears never to have been very specific, as proposed, and there is not the slightest evidence that plaintiff ever indicated to defendant or her brothers that such a reservation would be agreed to. We reach the conclusion therefore that Oliver had authority to make such contract as was made, and that it became binding upon the defendant.

The decree of the trial court is *affirmed*.